NATHANIEL BRUSH, Esquire, Judge of Probate,
Bennington District, Appellant,
*against*
JOSEPH HOUSE and others, Appellees.

RULE to show cause.

The plaintiff declared in debt upon an administration bond made to him in his said capacity.

Attach *Bulah Billings, Joseph House, Jonas Fay,* and *Loan Dewey*, to answer unto *Nathaniel Brush,* Esquire, Judge of probate of wills, and of granting letters of administration within and for the District of *Bennington,* in a plea that they render to him in his said capacity, the sum of three thousand pounds lawful money, which they justly owe, and unjustly detain from him in his said capacity ; for that whereas, on the 5th day of *July*, A. D. 1789, at *Bennington* aforesaid, the said *Bulah, Joseph, Jonas,* and *Loan,* by their certain writing obligatory, sealed with their seals, and now shown to the Court here, the date whereof is the day and year last aforesaid, became jointly and severally held and firmly bound to the said *Nathaniel Brush,* Esquire, then and now Judge of probate of wills, and of granting letters of administration within the said District of *Bennington,* in his said capacity, and to his successors in said office, in the full and just sum of three thousand pounds lawful money, to the true payment of which said sum the said *Bulah, Joseph, Jonas,* and *Loan* bound themselves and each of themselves, and each of their heirs, executors, and administrators, jointly and severally, for and in the whole of said sum, to be paid to the said *Na-*

In an action in the name of the Judge of probate, upon an administration bond, where the bond is dated, and the writ tested anterior to the passing of the present act for the probate of wills, &c. the Judge of probate cannot be compelled to certify the name of the person applying to him to prosecute under the 103d section of that act.

*thaniel Brush,* Esquire, in his capacity aforesaid, or to his successors in said office, when they should be thereunto afterwards requested, yet the said *Bulah, Joseph, Jonas,* and *Loan,* have not, nor yet hath either of them, though often thereunto requested, rendered the said sum, nor any part thereof, to the said *Nathaniel Brush,* Esquire, in his said capacity, but to render the same to him in his said capacity have hitherto refused, and still do refuse; whereupon the plaintiff saith he is injured *ad damnum,* 3,000*l.*

Writ dated *May* 2, 1794.

*Vermont* Stat.
vol. 1. p. 129.
c. viii. s. 26.

Defendant craved *oyer* of the bond and condition thereof, which was read to him, being in the statute form of an administration bond, in which *Bulah Billings* and *Joseph House,* administratrix and administrator on the estate of *Samuel Billings,* deceased, intestate, were principals, and the other two defendants sureties; dated 5th *July,* 1789.

The defendants now moved a rule upon the plaintiff, to show cause, if any he have, why he should not certify to the Court here, the name or names of the person or persons making application to him to put their said bond in suit; and that the person or persons so named become the prosecutor or prosecutors in this suit, in his or their own right, agreeably to the 103d section of an act, entitled, an act for the probate of wills, and the settlement of testate and intestate estates, passed by the General Assembly of this State, *March* 10th, 1797, that the action aforesaid may be prosecuted and defended in pursuance of the statute aforesaid.

Rule granted.

*Robinson*, for the plaintiff, at the present term showed cause.

Our *Judge of Probate* is but another name for the Bishop's Ordinary in *England.* He possesses all the power of that officer, combined with those of the Prerogative Court. Indeed our probate act is in most parts transcribed from the several statutes of *Edward* III. *Henry* VIII. and of the 22d and 23d of *Charles* the second. The Judge of Probate has also the common law powers of the Archiepiscopal Court and the Ordinary. It is curious to observe, that this useful and beneficial office owes its existence among us entirely to the common law; for although the districts in which the several Judges of Probate may exercise their office, are established by statute, and much of his power derived from the same source, yet the office is no where created by our statute law, nor is it named or contemplated by our constitution of government.

The common law and statute powers of this officer are, to see that the last wills and testaments of persons deceased should be carried into effect, so far as is consistent with law, and to superintend the disposal and distribution of the estates of all persons dying testate or intestate, and to watch carefully over the interests of the heirs, the widow, the orphan and fatherless, as well as the interest of the government, and all those connected, however remotely, with the estate of the deceased. As this cannot, from the multiplicity of official business, be done personally in all cases by the Judge, he is empowered to appoint an agent or agents, styled administrators, and is authorized to demand and receive a bond from

Brush
v.
House.

*Vermont* Stat. vol. 2. p. 70. c. lxxii.

Brush
v.
House.

them, obligating the faithful discharge of their trust.

The form of this bond is prescribed in the statute. It runs immediately to himself in his official capacity, and to his successors in office, and is conditioned,

First. That the administrators shall make or cause to be made a true and perfect inventory of all and singular the goods, chattels, rights, credits, and estate of the deceased, which have or shall come to his knowledge or possession, or the possession of any other person for him.

Secondly. That they shall exhibit such inventory into the registry of probate by a day therein prescribed.

Thirdly. That they shall well and truly administer, according to law, the same goods and estate.

Fourthly. That they shall make a true and just account of their administration by a day prescribed them.

Fifthly. That all the rest and residue of said goods and estate, which shall be found remaining on their account, (the same being first examined and allowed by the Court of Probate,) they shall deliver or pay unto such person or persons respectively as the Court of Probate, by their decree or sentence pursuant to law, shall limit and appoint.

Sixthly. That if it shall afterwards appear, that the deceased made a last will and testament, the administrators shall, on request, the approbation of such testament being first had and made, deliver their letter of administration into the Probate Court.

*Vermont* Stat. vol. 1. p. 129.    This bond, by the 26th section of the probate act, is to be given to the Judge of Probate, and his suc-

cessor in office, without any mention of *his assigns.*
By the tenor of this bond, the Judge of Probate has
the inherent and full right to prosecute for the
breaches of any of its conditions. This he may do
of his own official act.

But it seems, by the 103d section of the probate
act, provision is made, that, on application to the
Judge of Probate by any person who has been in-
jured by the breach of the conditions of such bond,
requesting such bond to be put in suit, it shall be his
duty, on such applicant's giving good and sufficient
security to his satisfaction, to prosecute such suit to
effect, and, in case of failure, to pay all damages and
costs, to cause an action to be brought on such bond,
and the Judge of Probate shall certify to the Court
the name of the person making such application, who
shall be taken and deemed the prosecutor in such
action. *This* the Judge of Probate in the present ac-
tion has not done, and the present rule is filed to
compel him to do it.

The question therefore is, whether the 103d sec-
tion of the probate act is to govern all suits upon ad-
ministration bonds, and whether it destroys the in-
herent official powers of the Judge of Probate, which
he derived from common law, from the 6th section
of the probate act, and from the tenor of the bond
itself.

We contend that the Judge of Probate is required
by the 103d section of the probate act, to certify the
name of the person injured by the breach of the con-
ditions of the administration bond *only*, when secu-
rity for costs and damages has been made to his sa-
tisfaction, and application has been made to him to
commence a suit. But if the security is not satisfac-

tory, this does not do away his power to maintain a suit upon the bond as of his own official act.

It appears that this action has been commenced by the mere motion of the Judge of Probate; for it is apparent from the record, that no application has been made to him by any person, and that no security has been taken by him to respond damages and costs in case of failure.

It must therefore be considered as an action brought by the Judge in his official capacity for some breach of the conditions of the bond, of which the injured would not complain, or which more particularly affected him in his office.

That the Judge of Probate did not cause this action to be brought on application of any person injured, is further obvious; for he could not cause the action to be thus instituted *unti* the applicant had given satisfactory security to prosecute to effect.

The Judge of Probate is required by the rule to show cause why he should not certify the name of the person applying to him to commence the suit. How shall this be done, if no such person exists? But if such person exists, can the Judge now certify? If he can and does, can the Court, in the language of the statute, take and deem such person to be prosecutor in the action? It is manifest they cannot by the statute, for they cannot deem such person to be prosecutor, unless security be given to the Judge of Probate for responding costs and damages. The Court cannot take such security; for it must be taken to the satisfaction of the Judge of probate. He cannot demand it *now*; for he could only demand it on application to commence the suit.

That occasions may happen, where, if the Judge of Probate did not institute the suit as by his own motion and official act, great injustice might be suffered, is apparent.

Who are the persons who may be injured by the breach of an administration bond?

First. The creditors to the intestate.

Secondly. The heirs and the widow.

Suppose there are no creditors, or, if any, that the administrator has colleagued with them, and they will not apply to the Judge of Probate; or if, by the machinations of the administrator, the widow and heirs are so impoverished as that they are unable to give security to respond the costs and damages, or to command funds to maintain the suit.

Or, lastly, suppose a debt due to the State. Who should apply to the Judge of Probate on behalf of the government? Would security to respond costs and damages in such case be required?

Would it not, in all such cases, and many others which might be mentioned, be the duty of the Judge, of his own mere official motion and act, to institute an action upon breach of the conditions of an administration bond? Would the Court in such cases require the name of the applicant to be certified?

What the motives were which led the Judge of Probate to institute this action cannot *now* be known, as the rule was thrust in immediately after the bond had been read on *oyer*, and before the breaches of the condition of the administration bond declared upon had been discovered by assignment.

We shall not detain the Court further than merely to notice a parallel statute case:

A prisoner for debt, in order to obtain the liberties of the prison, is required by the statute to execute a bond with sufficient surety to the sheriff. By an after provision of the statute, such bond must on demand be assigned to the creditor, who may maintain an action on the same; but if the sheriff does not assign the bond, has this ever been construed to do away the inherent right of the sheriff to maintain an action upon the bond?

We therefore trust the rule will be discharged.

*Fay, e contra*, read the 103d section of the probate act, * and observed—

---

\* That on application to the Judge of Probate by any person who has been injured by the breach of any conditions contained in the bond taken by such Judge, of any executor or executors, administrator or administrators, as before directed in this act, requesting such bond to be put in suit, it shall be the duty of the Judge to whom such bond was or shall be taken, on such applicant giving good and sufficient security, to the satisfaction of such Judge, to prosecute such suit, and to answer and pay all damages and costs in case of failure to prosecute to effect, to cause an action to be brought on such bond, and shall certify to the Court before whom such action shall be brought, the name of the person making such application, who shall be taken and deemed to be the prosecutor in said action; and if the defendant or defendants in such action shall plead performance of the conditions of such bond, the prosecutor may in reply assign as many breaches affecting his right and interest thereon as he shall think fit; and the Jury, upon trial of such issue or issues as shall be thereupon put to them, shall find and assess damages for such breaches as the prosecutor shall prove, and on such verdict the Court shall enter up judgment for the whole penalty of the bond, and execution shall issue in favour of the prosecutor for such sum as the Jury shall

Brush
v.
House.

We consider, by the true construction of the statute, that the Judge of Probate never can institute or maintain an action upon an administration bond, upon his own mere motion, or for his mere official benefit.

The bond is executed to him for the benefit of others.

There is no possible breach of the conditions of it which can affect him separately, without an injury to those for whose benefit it was executed.

---

have found in damages and costs; and if judgment in such action shall be rendered for the plaintiff, on demurrer, on confession, by default, or *nil dicit*, the prosecutor may assign as many breaches as aforesaid as he shall think fit, the truth whereof shall be found, and the damages sustained be assessed according to law, and execution shall issue in favour of the prosecutor for the amount of such damages and costs, and the judgment shall remain as a security for any further or other breaches of the condition of said bond; and any person thereafter, who shall be injured by any breach of the condition of said bond, or the executors or administrators of such person may prosecute a *scire facias* on that judgment from time to time, in his, her, or their own name and right, or in the right of those whom they represent, against the defendant or defendants, his, her, or their executors or administrators, and may thereupon assign as many breaches, affecting his right and interest, as he shall think fit, and thereupon damages shall be assessed and execution issue in favour of such last-mentioned prosecutor as aforesaid; and if the plaintiff or plaintiffs, in any of the actions aforesaid, shall not prove a breach or breaches of the condition of said bond, affecting their own right and interest therein, he, she, or they shall pay reasonable costs to the defendant, of which he, she, or they may have execution in due form of law.

If the Judge of Probate should recover in an action of this nature, instituted and maintained upon his mere motion without application of any person injured, what must be the judgment? If it is replied, the whole penalty of the bond, this does not meet the question, for the bond must be subjected to Chancery. And what must be the judgment in Chancery? If this difficulty be overcome, what shall be done with the avails of the judgment? Is the Judge to pocket the money? It cannot go to the person immediately injured; it cannot be distributed among the heirs or creditors; for all distribution to them must be made through the medium of the administrator, and it would be difficult to consider a sum of money in the hands of the Judge of Probate, the avails of a judgment recovered by his mere official act against the *administrators*, as assets in *his* hands.

These administration bonds, given nominally to the Judge of Probate, though in reality to those concerned in an intestate estate, are deposited in the archives of his office. As a Judge in his Court, he can do no more than the Judges of this or any other Court. He cannot, even if he sees an injury sustained, proceed, *ex officio*, to remedy it, without legal application for redress. And it must be observed, that whenever an action of this nature is brought in his name, in every stage of progression in the suit, the action will inevitably point to some person injured, or supposed to have been injured, and never will indicate an injury sustained by the Judge in his mere official capacity.

If the administrator has not made an inventory, or has failed to exhibit it in time;

If he does not truly administer, or render a true account of his administration;

If he does not deliver and pay the residue, according to the decree of the Probate Court;

Or refuses to surrender his letter of administration, in case a last will and testament is found—Who is injured? the Judge? No; but the creditors and widow and heirs.

If we had pleaded, that we had in all things kept our covenants, the plaintiff would have been obliged to assign a breach; and what breach could he have assigned, which would not have directly pointed to the applicant or applicants for this prosecution?

If the breach had been the not making any or a true inventory, this might have been an injury to all concerned in the intestate's estate.

If the administrators did not truly deliver and pay the *residue* to the heirs, or any of them, he who had not received his proportion would have appeared to be the real prosecutor.

If they did not surrender their letters of administration upon a will's being found, the executor, devisees, or legatees, would have appeared as the persons injured. But in what case could the Judge of Probate say he was himself injured in his official capacity? The position is therefore assuredly correct, that in no case can a Judge of Probate institute a suit upon an administration bond, for his official benefit, or his mere motion.

The statute, by the term, " on application to the Judge of probate," intends that these suits shall be brought in no other way; for in no other way can several chanceries be taken on the same bond, and applied as remedial to several injuries.

Brush
v.
House.

By the law which empowers the law courts to exercise chancery powers, a bond once chancered can never be chancered again. If this action is indeed brought by the Judge without application of any one injured, and the defendants should move to chancer the penalty, and the Court should chancer the penalty to such sum in damages as the Judge should make it appear he has in his official capacity sustained; or if, as has been suggested, this action is brought by the Judge of Probate through a commiseration for some heir impoverished by the chicanery of the defendants, without any record of any application, or any bonds taken to prosecute to effect, and the Court proceed to render judgment in it, and the bond is chancered to a sum adequate to the injury sustained by such individual heir, it is certain it will not be done under the 103d section of the probate act; and the discharge of such judgment by the defendants will for ever put the bond to rest: for a judgment on the penalty and subsequent chancery may for ever be pleaded in bar to a bond unless saved by some statute, and, as in relation to actions on administration bonds, no other statute exists.

A case is put of a government debt, in which it is said no application can be made to the Judge of Probate, and no bonds for the responding costs can be taken; and a conclusion drawn, that in such case the Judge from necessity must institute an action of this nature on his mere motion.

We consider that the government has its attorneys appointed to represent the State in such cases, and the State Attorney will be the applicant. This statute must be then construed respecting the recognisance for costs, like all other statutes which have for

their objects the concerns of the citizens, but in which the pecuniary interests of the State may possibly be involved.

If the rule is discharged, and the action proceeds in the name of the Judge of Probate, without the name of any prosecutor being certified, and we should have judgment for our costs, who is to respond them? Would not this be the first instance where costs are taxed substantially against a judicial officer of government acting in his official capacity? The section under consideration provides against this; for on the prosecutor's name being certified by the Judge of Probate, and judgment for the defendants for their costs, resort may be had to the bonds directed to be taken for the especial purpose of securing the Judge from payment of costs.

It is objected, that the demand in the rule upon the Judge of Probate to certify the name of the applicant, cannot now be made; for the application of the person injured to the Judge must have been made, and he have certified before the commencement of the suit; and that this was done does not appear by the record.

We presume such application has been made, but the Judge of Probate has omitted to certify it. The time when the Judge shall certify is not pointed out in the statute.

It is further objected, that if the Judge should now certify upon the rule's being made absolute, the Court cannot admit the applicant to prosecute, for there are no bonds for the prosecution taken.

We presume such bonds have been taken. If they have not, this has no relation to the present rule, which merely calls upon the Judge to certify the

name of the person applying to him to put the bond declared upon in suit. Whether, when this person is named, he will be so circumstanced as to be enabled to prosecute the suit, is a question to be decided as between us and the applicant, in which the present plaintiff has not now, and certainly will not then, have any interest.

If, however, bonds for prosecution have not been taken, we may waive any objection, and proceed to defend without them; but we consider that the Court may, under the 45th section of the judiciary act, in this or any other suit *pending*, order bail for prosecution to be entered.

*Vermont* Stat. vol. 1. p. 71.

It is objected, that the bond for the prosecution cannot be taken by this Court, as it must have been taken to the *satisfaction* of the Judge of Probate; but it will not be contended, that, if the Judge had considered bail to be satisfactory, this Court could have increased the quantum, or have ordered new bail to have been entered.

The case of bonds for the liberties of the prison we conceive to be by no means parallel. The bond is there taken to the sheriff for his own benefit, and not for that of others. It is his duty to keep his prisoners safely. When they are admitted to the liberties he is to take sufficient bonds, and is responsible for their sufficiency. These bonds may be assigned to the judgment creditor, but the sheriff is not obliged, *on application*, to assign them. In case of escape he may do it, and no action in such case shall be maintained against the sheriff for any escape, until the sufficiency of such bond has been tried in a suit brought by the creditor as assignee of the sheriff,

*Vide* vol. 1.

but the sheriff may refuse to assign, in which case he    Brush
exposes himself immediately to an action for the    v
escape, and may recur to the bonds for his own se-    House.
curity ; but in all cases such bonds are taken for the
personal security of the sheriff, and not for the mere
benefit of the creditor, whose eventual security is the
sheriff himself.   It is right, then, that the sheriff
should control the suits on such bonds.   But what
personal interest has the Judge of Probate in admi-
nistration bonds ?   Is he any ways responsible for
their sufficiency ?

We shall conclude by offering one more, which is
an equitable reason, why the Judge of Probate should
certify the name of the applicant, that we may know
our adversary, in which case this Court will always
favour the amicable accommodation of the suit.

Could we know our adversary we might accord
with him.   We might submit the controversy to ar-
bitrators, or we might refer the suit under a rule of
this Court.

But can the Judge of Probate accommodate, sub-
mit to arbitration, or refer ?

We therefore trust the rule will be made abso-
lute.

*Smith*, for the plaintiff, arose to reply, but was in-
terrupted by the Court.

*Curia.*   Upon recurrence to the files, we find this
action was commenced on the 2d of *May*, 1794, and
the bond declared upon was executed the 5th of *July*,
1789.   The present probate act was passed on the    *Vermont* Stat.
revision of the statutes, *March* 10th, 1797.   The    p. 54.   *Haswl*
edit.

statute which governed at the date of this bond, and at the impetration of the writ, is the act for the settlement of testate and intestate estates, passed *March* 8, 1787. This statute does not contain any provisions similar to those of the 103d section of the present act. By our practice under the act of 1787, actions upon administration bonds were always brought in the name of the Judge of Probate, and apparently on his mere motion; no applicant was ever certified by the Judge as the prosecutor. This act, and the practice under it, undoubtedly caused great inconveniences to the Judge, the obligors in such bonds, and the persons injured by the breach of them. Some of these inconveniences have been mentioned by the defendant's counsel, and others recollected by the Court. To remedy such inconveniences, upon the revision of the probate act in 1797, the 103d section was inserted. At the time of the passing the present probate act, the act of *March* 8, 1787, was repealed by the general repealing statute, the 3d section of which enacts, "that the aforesaid repealed acts or laws shall be in full force as to all matters and things done or transacted during their existence, to which they relate, to all intents and purposes, as though this act had not been made, and all such matters may be prosecuted, commenced, done, and completed, at any time hereafter, pursuant to the same laws."

*Vermont* Stat. vol. 2 c. cxi. p. 124..

Now, whether this clause applies to the date of the bond declared upon, or the teste of the writ, is immaterial, as it appears both are anterior to the present revised probate act.

The Court are therefore of opinion, that the present action must be subjected to the statute of *March* 8,

1787, and is not within the provision of the 103d section of the statute of *March* 10, 1797.

Brush<br>v.<br>House.

Rule discharged.

*Robinson* and *Smith*, for plaintiff.
*Fay* and *Hall*, for defendants.